UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD WISNIEWSKI;<br>ANTHONY WISNIEWSKI; and<br>ALLAN WISNIEWSKI; | )<br>)<br>)<br>) | **07 C 6775** |
| Plaintiffs, | ) | No. |
| | ) | |
| vs. | ) | |
| | ) | **JUDGE NORGLE** |
| | ) Judge | **MAGISTRATE JUDGE COX** |
| CITY OF CHICAGO,<br>A Municipal Corporation; and<br>PHILIP CLINE;<br>JEROME FINNIGAN, Star 5167;<br>JAMES McGOVERN, Star 4461;<br>KEITH HERRERA, Star 17289;<br>CARL SUCHOCKI, Star 18391;<br>BRET RICE, Star 20010;<br>TIMOTHY McDERMOTT, Star 21084;<br>JOHN BURZINSKI, Star 3450; and<br>CHERYL HURLEY, as administrator<br>of the estate of JOHN HURLEY; | ) Magistrate Judge<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) Jury Demand<br>) | |

## COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction for Plaintiffs' federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

**Parties**

4. Plaintiffs are citizens of the United States, and residents of the City of Chicago.

5. Defendant police officers are duly appointed and sworn City of Chicago police officers. At all times material to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

6. The Defendant-Officers are sued in their individual capacities.

7. Defendant PHILIP CLINE is the former superintendent of the Chicago Police

-1-

Department. He is sued in his individual and official capacity.

8.    The CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

**Background**

9.    This case involves allegations against police officers who worked in the Chicago Police Department Special Operations Section (SOS). The incident alleged below was part of a pattern and practice of gross abuse of power by SOS officers, who essentially ran a robbery ring which entailed illegally entering person's homes; conducting illegal searches of homes, vehicles, and persons; making false arrests; stealing narcotics, jewelry, weapons, money (hundreds of thousands of dollars) and other valuables; planting drugs on innocent people; as well as physical abuse and intimidation. Indeed, in most cases that have been exposed, its been shown that SOS officers repeatedly used force, violence, threats and their guns to intimidate, terrorize, tyrannize, bully and petrify their victims – including Plaintiffs.

After an alleged internal investigation that suspiciously took several years (which allowed the rogue police officers to remain on the street and continue their reign of terror), finally on September 8, 2006, four Special Operations Section officers were arrested and charged: Defendants JEROME FINNIGAN, KEITH HERRERA, CARL SUCHOCKI, as well as Thomas Sherry. These officers were charged with a long list of felonies, including, *inter alia*, multiple counts of home invasion, armed violence, aggravated kidnaping, narcotics delivery, burglary, and official misconduct. The charged conduct took place over a period from about 2002 to 2005, and involved about 14 different incidents. Following the arrests, bond for Defendant JEROME FINNIGAN was set at $3,000,000.00, bond for KEITH HERRERA was set at $3,000,000.00, bond for Thomas Sherry was set at $2,000,000.00, and bond for CARL SUCHOCKI was set at $1,500,000.00. After these initial charges, the investigation continued. Numerous civilian-victims and more than a dozen police officers testified before the Cook County grand jury and implicated the SOS officers for the conduct described above. These police officers undoubtedly feared prosecution and lengthy imprisonment, and broke the sacred CPD code of silence.

On or about December 4, 2006, a second round of charges led to the arrest of three additional SOS officers: Defendant JAMES MCGOVERN, as well as Frank Villareal, and Margaret Hopkins, and. In addition, even more charges were filed against JEROME FINNIGAN, KEITH HERRERA, CARL SUCHOCKI, and Thomas Sherry. The second round of charges were

similar to the first, and included, *inter alia*, multiple counts of home invasion, armed violence, aggravated kidnaping, narcotics delivery, burglary, and official misconduct.

## Facts

10. Plaintiff DONALD WISNIEWSKI is a retired 52-year-old male. DONALD has been involved with Toys for Tots for over 20 years.

11. At the time of the incident, DONALD was 48; he had lived at 5322 South Laramie for 9 years, and had just recently undergone triple bypass surgery.

12. Plaintiff ANTHONY WISNIEWSKI is the son of DONALD. ANTHONY is 28 years old, and has worked for Cub Terminal for 1 1/2 years.

13. At the time of the incident, ANTHONY was 24.

14. Plaintiff ALLAN WISNIEWSKI is the son of DONALD. ALLAN is 19 years old; he has been working for Cub Terminal for six months and is enrolled in Southwest Youth Center as a part-time student.

15. At the time of the incident, ALLAN was 14.

16. At the time of the incident, DONALD and his wife, Roxann Wisniewski, owned their home at 5322 South Laramie, Chicago. They also owned several rental properties in Chicago.

17. On December 31, 2002, Plaintiff ANTHONY WISNIEWSKI had a New Year's Eve party at his Chicago apartment.

18. Joseph Finnigan, a nephew of Defendant JEROME FINNIGAN, attended the party.

19. In a conversation during the party, ANTHONY told Joseph Finnigan that his father collected guns.

20. A few weeks after the New Years party, several Defendant-Officers entered ANTHONY's apartment without a search warrant, arrest warrant, probable cause, exigent circumstances, or any other legal justification.

21. ANTHONY was sleeping in his apartment and woken up by a Defendant-Officer who was pointing a gun in ANTHONY's face.

22. Defendant-Officers asked ANTHONY where his father, Plaintiff DONALD WISNIEWSKI, lived.

23. ANTHONY told the Defendant-Officers DONALD's address.

24. After this incident, ANTHONY moved back home with his parents at 5322 South

Laramie.

25. On or about February 15, 2003, at about 6:30 p.m., Plaintiffs DONALD and his son ANTHONY left their home at 5322 South Laramie in Chicago to go to a local tavern.

26. DONALD's wife, Roxann Wisniewski, left the home around the same time as DONALD and ANTHONY, to go play Bunco.

27. Plaintiff ALLAN WISNIEWSKI, who was 14 at the time, remained at the family home.

28. Shortly after DONALD, ANTHONY and Roxann left, a Defendant-Officer knocked on the front door of Plaintiffs' home at 5322 South Laramie.

29. ALLAN walked to the door to see who was there.

30. Defendant-Officers forced the door open.

31. The door slammed into ALLAN and knocked him against the wall.

32. Defendant-Officers entered Plaintiffs' home.

33. Defendant-Officers did not have a search warrant, arrest warrant, probable cause, exigent circumstances, or any other legal justification to enter Plaintiffs' home.

34. Defendant-Officer forcefully pushed ALLAN against a wall.

35. ALLAN was seized and not free to leave.

36. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop, detain, seize or search ALLAN.

37. Defendant-Officers thoroughly searched Plaintiffs' home.

38. Defendant-Officers did not have a search warrant, probable cause, exigent circumstances, or any other legal justification to search Plaintiffs' home.

39. During the search, a Defendant-Officer took ALLAN into the dining room and asked him where his father, DONALD WISNIEWSKI, kept the guns.

40. ALLAN was terrified and told the Defendant-Officer where DONALD's guns were stored.

41. Defendant-Officers continued the illegal search, and recovered and seized approximately seven of DONALD's guns.

42. Defendant-Officers only inventoried 4 of the guns that they recovered.

43. During the search of Plaintiffs' home, a Defendant-Officer showed ALLAN a picture of his father DONALD and his brother ANTHONY, and asked ALLAN where they were.

44. ALLAN told the Defendant-Officer that they were at Clowns, a local tavern

located at 59th and Kedzie.

45. Some of the Defendant-Officers went to Clowns to find DONALD and ANTHONY. Other officers stayed and continued to search Plaintiffs' home.

46. Some Defendant-Officers entered Clowns and approached DONALD, who was sitting at the bar.

47. Defendant-Officers grabbed DONALD and pulled him off his bar stool.

48. DONALD asked the Defendant-Officer what was going on.

49. Defendant-Officers told DONALD to, "Shut the fuck-up."

50. DONALD was seized and not free to leave.

51. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop, detain, or seize DONALD.

52. DONALD informed the Defendant-Officers that he had recently underwent triple bypass surgery.

53. Defendant-Officer continued to be rough with DONALD.

54. ANTHONY asked the Defendant-Officers to take it easy with his father DONALD.

55. Defendant-Officers told ANTHONY that they were the police, they had guns, and they could do whatever the fuck they wanted.

56. Defendant-Officers then grabbed ANTHONY and handcuffed him.

57. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop, detain, or seize ANTHONY.

58. After DONALD and ANTHONY were handcuffed, Defendant-Officers removed them from Clowns and put them in a Chicago police car.

59. While some of the Defendant-Officers were at Clowns, other Defendant-Officers had remained at Plaintiffs' home and continued searching it. During the search, Roxann Wisniewski had called her son ALLAN and told him that she would be home in about 10-15 minutes.

60. When ALLAN was talking to his mother, Defendant-Officers ordered ALLAN not to tell Roxann that the officers were there.

61. After ALLAN hung up, Defendant-Officers told ALLAN that he should not be stupid and tell anyone about what the officers had done. The Defendant-Officers warned ALLAN that he would be "fucked" if he opened his mouth to anybody.

62. Defendant-Officers then left Plaintiffs' home.

63. When Roxann arrived home, she saw that her home had been ravaged and ALLAN was crying.

64. Roxann discovered that many items were missing.

65. Amongst the missing items was some old Chicago police memorabilia that Roxann had received from her father, retired Chicago police officer Donald Hoyne, Star 10050.

66. Roxann called DONALD. A bartender at Clowns answered DONALD's cell phone, and told Roxann that the police had arrested DONALD and ANTHONY.

67. Defendant-Officers had transported DONALD and ANTHONY to the 8th District Chicago police station.

68. While in custody at the police station, DONALD saw some of the Defendant-Officers carrying his guns.

69. DONALD asked Defendant KEITH HERRERA why they had his guns.

70. Defendant HERRERA told DONALD to, "Shut the fuck-up." HERRERA also explained to DONALD that "we are the fucking police, and can do what we want."

71. Defendant HERRERA threatened to beat DONALD.

72. Defendant-Officers charged DONALD with failure to register his guns.

73. Defendant-Officers charged ANTHONY with disorderly conduct.

74. Before they were released from the police station, Defendant-Officers told DONALD and ANTHONY, "If you make any trouble for us, we will make big trouble for you."

75. A Defendant-Officer explained to ANTHONY that if he complains about what the SOS officers did to him, he will "wind-up in prison or dead."

76. A Defendant-Officer told DONALD that they will charge him with child endangerment and take his kids away from him if he complains about his arrest or how it happened.

77. Defendant-Officers also told DONALD and ANTHONY that they got cop friends in the entire city, and that they could have DONALD and ANTHONY arrested at anytime.

78. Based on the threats, DONALD and ANTHONY feared for their freedom and their lives.

79. DONALD and ANTHONY were afraid that they would disappear or be killed if they challenged their arrest or made a complaint about it.

80. Because they were so terrified of the police, DONALD and his family began

making plans to sell their home and rental properties and move out of the City of Chicago.

81. Approximately 5 weeks after the incident, Defendant-Officers confronted ANTHONY while he was walking home from Lindy and Gerties on Archer Avenue.

82. Defendant-Officers asked ANTHONY to give them a name of a person who had guns, drugs, or money. The Defendant-Officers wanted this information so they could go to that person's house and steal money and drugs, and then threaten the person with prison unless they gave the officers the name of yet somebody else who had money (who they could then go steal from).

83. ANTHONY told the Defendant-Officers that he did not know anybody that had guns, drugs, or money.

84. For that answer, the Defendant-Officers punched and beat ANTHONY.

85. As a result of the beating, ANTHONY was taken to a hospital and received 8 stitches.

86. DONALD was able to sell all of his rental properties except for one, and he was not able to immediately sell his house. Nonetheless, DONALD and his family felt they had to move out of Chicago and get away from the SOS officers, and they moved to Watseka, Illinois.

87. After they moved, DONALD and Roxann opened a small bar and grill in Watseka, they felt like they were starting their lives all over again.

88. As explained above, as a result of the State's Attorney's Office investigation, FINNIGAN and several other officers were criminally charged. After the charges were filed, FINNIGAN was arrested and appeared in bond court on September 8, 2006. At this bond hearing, it was alleged that after JEROME FINNIGAN became aware of the criminal investigation, he communicated with a victim-witness to attempt to get her to lie, and even told her that if she did not lie for him, he would go to prison. Then, after he was released on bond, it has been alleged by the Cook County State's Attorney's Office that FINNIGAN sought out information trying to learn which prosecutors were working on his case, and then made threats against a female prosecutor handling the case.

At the second bond hearing, the State's Attorney's Office alleged that after KEITH HERRERA was released on bond for the initial charges, he too intimidated and attempted to tamper with a witness. The prosecution explained that while HERRERA was at a nightclub in the 13th district, he approached a victim and then later followed him into restroom where he confronted the person about the criminal charges and made veiled threats. The next day,

HERRERA falsely reported to the police in the 8th district (where he once worked) that he was a victim of an assault at the nightclub in the 13th district.

89. More recently, on September 26, 2007, Defendant FINNIGAN was arrested by FBI agents on federal charges of murder-for-hire. FINNIGAN was recorded planning the murder of a fellow SOS officer who FINNIGAN thought was working with the government and was going to be a witness against him in the pending criminal case. FINNIGAN was also recorded discussing the murder of three other police officers who he feared were cooperating and would testify against him.

90. As superintendent and ultimate supervisor of the SOS unit, Defendant CLINE had the opportunity to take measures which would prevent the rogue SOS officers from continuing their reign of terror, but chose not to do so. Instead, Defendant CLINE encouraged and rewarded the SOS misconduct. Defendant CLINE was deliberately indifferent to the rights of Plaintiffs by allowing the rogue SOS officers to remain on the street.

91. Defendant CLINE condoned, ratified, and encouraged the police misconduct complained of herein by failing to properly control and supervise the rogue SOS officers, and by failing to establish procedures to prevent future repeat-offenders.

92. Defendant CLINE's acts and omissions were the product of his reckless and callous indifference to Plaintiffs' constitutional rights.

93. Each individual Defendant-Officer acted willfully, wantonly, maliciously, oppressively, and with a conscious disregard and deliberate indifference to Plaintiffs' rights.

94. As a direct and proximate result of the acts of the Defendants described above, Plaintiffs have suffered damages including loss of physical liberty, emotional distress, physical pain and suffering, and other damages.

## COUNT I
### (42 U.S.C. § 1983 – Excessive Force)

95. Plaintiff ANTHONY WISNIEWSKI realleges paragraphs 1 through 94 as if fully set forth herein.

96. Defendant-Officers pointed a gun at Plaintiff ANTHONY WISNIEWSKI.

97. The Defendant-Officers violated Plaintiff ANTHONY WISNIEWSKI's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff ANTHONY WISNIEWSKI asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Unreasonable Seizure)

98. Plaintiff ALLAN WISNIEWSKI realleges paragraphs 1 through 94 as if fully set forth herein.

99. The actions of Defendant-Officers in seizing Plaintiff ALLAN WISNIEWSKI without any legal justification or probable cause violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches and seizures.

WHEREFORE, Plaintiff ALLAN WISNIEWSKI asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – Excessive Force)

100. Plaintiff ALLAN WISNIEWSKI realleges paragraphs 1 through 94 as if fully set forth herein.

101. The actions of Defendant-Officers violated Plaintiff ALLAN WISNIEWSKI's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff ALLAN WISNIEWSKI asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IV
### (42 U.S.C. § 1983 – Failure to Intervene)

102. Plaintiff ALLAN WISNIEWSKI realleges paragraphs 1 through 94 as if fully set forth herein.

103. Defendant-Officers present for the physical abuse of Plaintiff ALLAN WISNIEWSKI had the opportunity but failed to intervene to prevent such abuse.

104. The actions of Defendant-Officers violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff ALLAN WISNIEWSKI asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;
b) Award Plaintiff compensatory and punitive damages, as determined at trial;
c) Award Plaintiff attorney's fees and costs;
d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT V
### (42 U.S.C. § 1983 – Illegal Search of Home)

105. Plaintiffs reallege paragraphs 1 through 94 as if fully set forth herein.

106. The Defendant-Officers did not have a search warrant, probable cause, exigent circumstances, or any other legal justification to search Plaintiffs' home.

107. The actions of Defendant-Officers in searching Plaintiffs' home without any legal justification violated their Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches and seizures.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against said Defendant-Officers;
b) Award Plaintiffs compensatory and punitive damages, as determined at trial;
c) Award Plaintiffs attorney's fees and costs;
d) Award such other and additional relief that this Honorable Court deems just and

equitable.

## COUNT VI
### (42 U.S.C. § 1983 – Excessive Force)

108.	Plaintiff DONALD WISNIEWSKI realleges paragraphs 1 through 94 as if fully set forth herein.

109.	The actions of Defendant-Officers violated Plaintiff DONALD WISNIEWSKI's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff DONALD WISNIEWSKI asks that this Honorable Court:

a)	Enter judgment against said Defendant-Officers;

b)	Award Plaintiff compensatory and punitive damages, as determined at trial;

c)	Award Plaintiff attorney's fees and costs;

d)	Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VII
### (42 U.S.C. § 1983 – Excessive Force)

110.	Plaintiff ANTHONY WISNIEWSKI realleges paragraphs 1 through 94 as if fully set forth herein.

111.	The actions of Defendant-Officers violated Plaintiff ANTHONY WISNIEWSKI's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff ANTHONY WISNIEWSKI asks that this Honorable Court:

a)	Enter judgment against said Defendant-Officers;

b)	Award Plaintiff compensatory and punitive damages, as determined at trial;

c)	Award Plaintiff attorney's fees and costs;

d)	Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VIII
### (42 U.S.C. § 1983 – Civil Conspiracy)

112. Plaintiffs reallege paragraphs 1 through 94 as if fully set forth herein.

113. Defendant-Officers knowingly and intentionally schemed and worked together in the common plan to illegally enter Plaintiffs' home, illegally arrest, search and physically abuse Plaintiffs, and to cover it up.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IX
### (42 U.S.C. § 1983 – *Monell* Claim against the City of Chicago)

114. Plaintiffs reallege all of the above paragraphs and counts, as if fully set forth herein.

115. At all times material to this Complaint, there existed in the City of Chicago the following practices, policies and customs:

    a. stopping, detaining, arresting, and searching civilians without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis;

    b. searching civilians' homes without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis;

    c. arbitrary use of excessive force against arrestees, detainees and other civilians;

    d. denial of substantive due process, abuse of legal process, malicious prosecution, and filing of false charges against innocent persons;

    e. mental abuse, oral abuse and assault of arrestees, detainees, and other civilians;

    f. preparing false and incomplete police reports to cover up police misconduct including unconstitutional searches and seizures;

    g.    not preparing police reports, and false denial that an incident of misconduct even took place, in attempt to suppress and conceal police misconduct including unconstitutional searches and seizures,

    h.    filing false charges and pursuing baseless prosecutions in order to protect police officers from claims of improper conduct and avoid liability;

    i.    a *code of silence* in which police officers fail to report police misconduct including the type of misconduct alleged by Plaintiff in this Complaint, and described in sub-paragraphs a - h above;

    j.    said *code of silence* also includes police officers either remaining silent or giving false and misleading information during official investigations to cover up misconduct, and protect themselves and other officers;

    k.    failure to adequately train, supervise and discipline police officers in the categories and fields of police work addressed in sub-paragraphs a - h above;

    l.    failure to adequately train and supervise police officers to rectify the malfeasance described in sub-paragraphs a - h above;

    m.    failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by Plaintiff in this Complaint, and described in sub-paragraphs a - I above;

    n.    failure to adequately discipline police officers for the type of misconduct alleged by Plaintiff in this Complaint, and described in sub-paragraphs a - I above;

    o.    through the Office of Professional Standards (OPS), conducting inherently deficient investigations of citizen complaints of police misconduct in which an officer is disciplined in a minuscule percentage of cases, thereby encouraging even more police misconduct;

    p.    failure to deter police officers from the type of misconduct alleged in this Complaint, and described in sub-paragraphs a - I above, by its lack of discipline for police misconduct, and defective OPS investigations.

116. The actions of the Defendant-Officers as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago, the Chicago Police Department, and its police officers.

117. One or more of the following entities, authorities and officials are responsible for the policies, practices and customs alleged above: the Mayor of Chicago, the City Council, the aldermen, the Chicago Police Department, the Chicago Police Board (to which the City of

Chicago has delegated *de jure* final policy-making authority for the Chicago Police Department); the members of the Chicago Police Board, the Office of Professional Standards, and Superintendent Phil Cline (to whom the City of Chicago has delegated *de facto* final policy-making authority for the Chicago Police Department regarding the matters complained of herein).

118.    The practices, policies and customs described above are widespread, permanent and well-settled, and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

119.    The municipal policy-makers of the City of Chicago acted with deliberate indifference to the rights of Plaintiffs in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

120.    By their inaction and failure to correct the above-described practices, policies and customs, municipal policy-makers tacitly approve and thus indirectly authorize the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)    Enter judgment against the City of Chicago;

b)    Award Plaintiff compensatory damages, as determined at trial;

c)    Award Plaintiff attorney's fees and costs;

d)    Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT X
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

121.    Plaintiffs reallege all of the above paragraphs and counts as if fully set forth herein.

122.    The acts of the individual Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of their employment.

123.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the actions of the Defendant-Officers.

WHEREFORE, Plaintiffs ask that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from the actions of the Defendant-Officers.

**Plaintiffs demand trial by jury on all counts.**

                                                                                    Respectfully submitted,

                                                                                    /s/Lawrence V. Jackowiak  
                                                                                    Lawrence V. Jackowiak  
                                                                                    *Counsel for the Plaintiff*

Lawrence V. Jackowiak  
Louis J. Meyer  
Daniel P. Kiss  
Law Offices of Lawrence V. Jackowiak  
20 North Clark Street - Suite 1700  
Chicago, Illinois 60602  
(312) 795-9595